Hillsborough
No. 78-222

FREDERICK F. MCGRATH *& a.*

v.

CITY OF MANCHESTER

February 28, 1979

*Raymond A. Burgess* and *Henry T. Henzel*, of Manchester, by brief and orally, for the plaintiffs.

*Elmer T. Bourque*, city solicitor (*Ray Raimo* orally), for the defendant.

PER CURIAM. The main issue in this case is whether the city of Manchester is authorized to impose sewer rental charges on Manchester property owners who are connected to the sewer system but not connected to the city's waste water treatment plant. The plaintiff's sought an injunction to enjoin the city from collecting sewer rental charges and a declaratory judgment that chapter 29 of the Manchester city ordinances, which imposes these charges, is invalid. After a hearing, the Master (*Charles T. Gallagher*, Esq.) recommended that the petition be dismissed. The Superior Court (*King*, J.) approved the master's recommendation and reserved and transferred all questions of law. We affirm the dismissal of the petition.

The plaintiffs argue that the sewer rental charge is invalid on two grounds: first, that the sewer rental ordinance is inconsistent with the statutory authorization of RSA ch. 252; and, second, that the rental rate classifications contained in the ordinance, and the failure to charge the city's departments sewer rentals under the ordinance, violate the plaintiffs' right to equal protection of the laws.

The construction of the Manchester waste water treatment plant and interceptor sewer lines to that plant began after the State notified the city in 1968 that it could not continue to discharge city sewage into the Merrimack River. At the time the plaintiffs' petition was filed, approximately ten percent of Manchester property owners were connected through interceptors to the treatment plant. At the date of the hearing, seventy-five percent of Manchester property owners were connected to the plant; the remaining twenty-five percent will not be connected to the plant for at least three years.

In 1976, the city of Manchester adopted chapter 29, the sewer rental charge ordinance, "to insure that all persons whose mains enter main drains, common sewers, and treatment facilities . . . shall pay their just share of the costs of said facilities." Section 29-1. The plaintiffs argue that chapter 29 exceeds the scope of RSA ch. 252. That statute establishes two methods for the financing of sewer construction and maintenance: sewer rentals (RSA 252:10) and assessment levies (RSA 252:9). The difference between these two methods is as follows:

> [a] sewer rental fee is a continuous charge and is imposed because of one's use of the sewer system. An assessment levy, on the other hand, is in the nature of a tax; it is incurred only once and is collected from a landowner who is specially benefited by the sewer's construction whether or not he is actually connected to the sewer's system.

*Seal Tanning Co. v. City of Manchester*, 118 N.H. 693, 699, 393 A.2d 1382, 1386 (1978) (citations omitted). The city concedes that the rental charge cannot be justified as an assessment levy under RSA 252:9; our focus, therefore, is on RSA 252:10.

The plaintiffs argue that under RSA 252:10, rental charges can be imposed only for the costs of *new* sewer systems. RSA 252:10 provides that:

> [f]or the defraying of the cost of construction . . . maintenance, operation, and repair of newly constructed sewer systems . . . the mayor . . . may establish sewer rents. . . . The amount of such rents shall be based upon either the consumption of water on the premises connected with the sewer system, or the number of persons served on the premises connected with the sewer system. . . .

Under the challenged ordinance, the city is charging for the costs and maintenance of "the City's Sanitary Sewer System." Section 29-3. The master found, as a matter of law, that the city was authorized to charge sewer rentals and use the funds collected for the maintenance of the entire system. He found that the "old" system is an integral part of the "new" system's interceptor lines and water treatment plant. In essence he found that the city has only one system. His finding could reasonably have been reached on the basis of the evidence before him. *Sargent Lake Ass'n v. Dane*, 118 N.H. 720, 721–22, 393 A.2d 559, 561

(1978). The plaintiff's division of the sewer system into "old" and "new" systems is without merit.

■ ■  In addition, an examination of the statutory scheme for providing funds for sewer systems supports the master's conclusion that these rental charges are permitted. RSA 252:11, which establishes permitted uses for sewer rental funds, provides that funds received from sewer rentals may be used to pay for "enlargement or replacement of either sewer lines or sewage treatment facilities or for any purpose specified above." An examination of the history of RSA 252:11 shows that the former version of the statute prohibited use of sewer funds for "the extension of sewerage systems to serve unsewered areas or for any purpose other than those specified above." RSA 252:11 (Laws 1945, ch. 188, pt. 22:9). The amended version of RSA 252:11, however, expands the uses for sewer rental funds to include costs of previous expansion of the sewer system. Interpretation of the statute to include funding for previous expansion but forbid maintenance of that previous expansion would be unreasonable. This is particularly true in this case; the existing sewer system and the new interceptor system and waste treatment plant constitute one system. Further, RSA 252:11 permits use of funds for "any purpose specified above." The master ruled that the purposes for which the funds may be used includes those specified in RSA 252:9, which include maintenance costs for the entire system. This interpretation of the statute leads to a more reasonable result and effectuates the legislative purpose of providing adequate funding for sewer systems. The master's interpretation is preferable to the plaintiffs' narrow one, which leads to an unreasonable result. C. SANDS, 2A STATUTES AND STATUTORY CONSTRUCTION § 45.12 (3d ed. 1973).

■  The plaintiffs also contend that the rental charges cannot be imposed on them until they are connected to the waste water treatment plant. The services which the city presently provides to the plaintiffs will not change when they are connected to the interceptor system. Only the method of disposal of the plaintiffs' refuse after it has entered the system will change. Instead of flowing from the plaintiffs' homes into pipes and then into the Merrimack River, the refuse will flow into an interceptor system which leads to the waste water treatment plant. The plaintiffs are using and will continue to use the city's sewer system. We stated previously that RSA 252:10 "grants the city expansive powers . . .[but] 'the key to a valid rental charge is use.' " (Citations omitted.) *Seal Tanning Co. v. City of Manchester*, 118 N.H. at

700, 393 A.2d at 1386. Unlike *Seal Tanning*, where the plaintiffs were improperly charged sewer rentals "before their sewage facilities [were] connected to *the city sewer system*," *Id.*, the plaintiffs in this case are using the system and may be charged a rental fee.

The plaintiffs' second argument is that the charges levied under the ordinance violate their right to equal protection of the laws under the United States and New Hampshire Constitutions by establishing different service charges for owners of single-family dwellings and owners of multiple-unit dwellings and by failing to charge city departments sewer rental fees.

■■ The ordinance establishes a schedule of charges which includes quarterly rental charges of nine dollars per single-dwelling structure, and six dollars per unit for multiple-dwelling structures. This rate system is neither based upon a suspect classification nor infringes upon a fundamental right, and is therefore not subject to strict judicial scrutiny. *Belkner v. Preston*, 115 N.H. 15, 18, 332 A.2d 168, 171 (1975). Instead, it "need only bear a rational relationship to the espoused or court-supplied purpose." *Id.* The master was not persuaded that the different service charges are unreasonable or inequitable. Indeed, lower service charges for multiple-dwelling units are justified because of the economy of billing, accounting, and servicing such dwellings as a single property.

In upholding a similar sewer charge classification system, we stated that, "[t]he fact that absolute mathematical equality is not achieved does not render the system invalid." *Andrews v. Town of New London*, 117 N.H. 747, 749, 379 A.2d 441, 442 (1977).

■ The plaintiffs claim that because city residents benefit from municipal services, the residents should share in the payment of the departments' sewer bill. It is reasonable for the city to provide its departments with sewer services free of charge. Under RSA 252:4, the city sewer system is the property of the city; the city need not charge itself for the use of its own property. "[D]iscriminations in favor of the public . . . in the absence of legislation upon the subject . . . cannot be held illegal as a matter of law." 64 AM. JUR. 2d *Public Utilities* § 113 (1972).

The plaintiffs have not shown the ordinance to be invalid; therefore, the master correctly dismissed this petition.

*Exceptions overruled.*

BOIS, J., did not sit.