Hillsborough
No. 81-457

ROBERT J. BELL & a.

v.

MAURICE AREL, MAYOR OF THE CITY OF NASHUA, & a.

May 9, 1983

*Holland & Aivalikles*, of Nashua (*Francis G. Holland* on the brief and orally), for the plaintiffs.

*Robert P. Sullivan*, deputy corporation counsel for the City of Nashua, by brief and orally, for the defendants.

BOIS, J. The plaintiffs appeal from a Superior Court (*Dunn*, J.) decision approving a Master's (*Charles T. Gallagher*, Esq.) ruling that the defendants had acted lawfully in refusing to place the plaintiffs' proposed ordinance before the voters of Nashua. We affirm.

In September 1981, the plaintiffs, taxpayers of Nashua, submitted an initiative petition to the Nashua Board of Aldermen (the board), as permitted by the city charter. The petition, entitled "A Petition For Tax Relief For Nashua Citizens," satisfied all the procedural requirements for submission under the city charter and contained the following proposed ordinance:

"I. (a) The maximum amount of any ad valorum [sic] tax on real property shall not exceed one and one-half percent (1 1/2%) of the appraised value of such property.

(b) The appraised value shall mean the Nashua office of the Board of Assessors appraised valuation of real property as of April 1, 1981; or thereafter, the newly appraised value of real property when purchased, newly constructed, newly remodeled, or when a change of ownership has occurred after the 1981 assessment; after which, the appraised value of any such property may not be increased by more than one and one-half percent (1 1/2%) per annum.

II. Any license fee, resident tax, or any other such fees or taxes, imposed by the City of Nashua, in existence as of

July 1, 1981, shall not be increased by more than one and one-half percent (1 1/2%) per annum; nor shall any new taxes or fees, not in existence as of July 1, 1981, be enacted by the City of Nashua.

III. No spending unit of the City of Nashua shall increase its total spending by more than five percent (5%) per annum."

Section 100 of the city charter governed the board's disposition of the petition. Under this section, if an initiative petition is procedurally sufficient and the board of aldermen has a "legal right" to enact the proposed measure, then the board must, without alteration, either pass the measure or place it before the local voters. In this case, the board concluded, based on the opinion of corporation counsel, that the proposed ordinance was defective and that the board therefore had no legal authority to pass the measure. As a consequence, it refused to submit the ordinance to the voters.

The plaintiffs filed a petition for declaratory judgment, naming as defendants the Mayor of Nashua, the board of aldermen, the corporation counsel, and the city clerk. In their petition, the plaintiffs sought a ruling that the board had unlawfully refused to place the measure on the city ballot.

Following a hearing, the master ruled that the proposed ordinance conflicted with State and local laws, and that the board therefore had properly refused to submit the measure to the voters. The master specifically found that the real estate tax cap proposed in paragraph I(a) was beyond the board's authority because State legislation gave the New Hampshire Department of Revenue Administration the ultimate responsibility for setting real property tax rates. See RSA 41:15; RSA 71-A:30 (Supp. 1981). Likewise, he found that the legislature had preempted the provisions of paragraph I(b) relating to appraised values of real property. Finally, he ruled that paragraphs II and III, which sought to limit city spending as well as resident and license taxes, conflicted with provisions in the city charter that, in his view, afforded the board the power of appropriation. Based on these findings, the master recommended that the plaintiffs' petition be dismissed. The superior court entered a decree accordingly, and the plaintiffs appealed to this court.

 Although cities and towns have major roles in determining real estate tax rates, see RSA 41:15; RSA 44:2, their authority is not unlimited. The legislature has vested general supervisory power in the State commissioner of revenue administration to adjust and compute tax rates. See RSA 41:15; RSA 71-A:11, IV, :30, II (Supp. 1981); see also Town of Hudson v. State Dep't of Rev. Ad., 118 N.H.

19, 21–22, 381 A.2d 1202, 1203 (1978). It is well established that local legislation is invalid if it contradicts State legislation. *See Town of Salisbury v. New England Power Co.*, 121 N.H. 983, 984, 437 A.2d 281, 282 (1981); *State v. Driscoll*, 118 N.H. 222, 224, 385 A.2d 218, 220 (1978); *see also Stablex Corp. v. Town of Hooksett*, 122 N.H. 1091, 1102, 456 A.2d 94, 100 (1982). Thus, clearly neither the board of aldermen nor the citizens of Nashua could override the supervisory authority vested by statute in the commissioner of revenue administration.

The plaintiffs, recognizing the general limits on local legislation, argue that the trial court erred in finding that the real estate tax cap in paragraph I(a) of their initiative petition impermissibly invaded the province of the legislature. They claim that paragraph I(a) seeks merely to limit the amount of revenue which *the city* may derive from real property.

■ The plain meaning of paragraph I(a), however, does not support the plaintiffs' contention. The paragraph states that the maximum real estate tax shall not exceed one and one-half percent of the appraised value of such property. The wording is unqualified and does not distinguish, or even refer to, the respective functions of the city and State in setting real estate taxes. The proposed tax cap, on its face, would interfere with the statutory authority of the commissioner of revenue administration to adjust and compute tax rates. *See* RSA 41:15. The master therefore correctly found that paragraph I(a) was invalid.

■ In a similar fashion, the master properly ruled that the board was not empowered to enact the provisions in paragraph I(b) which would limit annual increases in appraisal values to one and one-half percent. The legislature has expressly established the manner by which taxable property is to be appraised. *See* RSA 75:1, :11 (Supp. 1981); RSA 79-A:5 (Supp. 1981). The statutory scheme requires local assessors to appraise most real estate "at its full and true value in money" or "at valuations based upon the current use values established by the [State advisory] board." RSA 75:1 (Supp. 1981); RSA 79-A:5, I (Supp. 1981). The limitations imposed on appraisal values in paragraph I(b) of the plaintiffs' petition run counter to the legislative mandate and, for this reason, cannot stand.

The plaintiffs argue in the alternative that even if paragraph I of the proposed ordinance was invalid, the spending and tax caps of paragraphs II and III were lawful, and the board of aldermen should have submitted these provisions separately to the voters. We disagree.

■ While citizens may, through an initiative petition, require limits on certain local spending and taxes, this power is subject to significant restrictions. *See Harriman v. City of Lebanon*, 122 N.H. 477, 446 A.2d 1158 (1982). The City of Nashua has numerous financial obligations imposed by the State legislature and the city charter, including the responsibility to appropriate funds for the district court, welfare programs, pensions, and other matters. *See, e.g.*, RSA 502-A:1, XX (Supp. 1979), :2 (Supp. 1981), :6 (Supp. 1981), :31; RSA 165:1 (Supp. 1981); RSA 169-B:40 (Supp. 1982); RSA 169-C:27 (Supp. 1982); RSA 169-D:29 (Supp. 1982); NASHUA CITY CHARTER Appendix §§ A-481 to -488. Those obligations mandated by the State are clearly beyond the reach of the local government, while the obligations established by the city charter can be altered only through charter amendments.

■■ Consequently, any initiative petition which seeks to limit city spending or taxes must ensure that no impairment of the city's ability to carry out its mandatory obligations will occur. Here, paragraphs II and III of the ordinance contained no such proviso and, like paragraph I, were therefore invalid. Were they to guarantee continued funding of the mandated programs, such initiatives could limit or prevent new tax levies. If the proposed ordinance is redrafted to do what it at least is legally permitted to do in part, it could then be presented to the voters.

■ Even if paragraphs II and II had properly limited the spending and tax cap to programs that were entirely within the city's discretion and not mandated by the city charter, the board would have had no authority to excise these provisions from the proposed ordinance and to place them on the ballot without paragraph I. As previously noted, the city charter states that if a measure appears lawful and procedurally sufficient, the board must either "pass said measure *without alteration*" or "submit the proposed measure *without alteration*" to the voters. (Emphasis added.) The language is plain and unambiguous and would not have permitted the board to sever the provisions of the proposed ordinance.

■■ Finally, conceding that their ordinance may have been inartfully drafted, the plaintiffs contend that the measure should have been construed to avoid illogical and unlawful results. But they fail to observe that the rule of statutory construction which prefers logical interpretations applies only to statutes that are already in effect, and does not apply to a measure like the plaintiffs', which was merely a proposal. *See generally State v. Roger M.*, 121 N.H. 19, 21–22, 424 A.2d 1139, 1141 (1981); 2A SUTHERLAND STATUTORY

Construction § 45.12 (C. Sands 4th ed. 1973). Certainly, it is both reasonable and practical, whenever possible, to require that all ambiguities, inconsistencies, and defects in proposed legislation be mitigated prior to enactment. For the foregoing reasons, the plaintiffs' measure failed to satisfy such a requirement.

*Affirmed.*

All concurred.