**Randi Beth BERNIGER, et al.,
Plaintiffs, Appellants,**

v.

**MEADOW GREEN–WILDCAT CORP.,
d/b/a Wildcat Mountain, et al.,
Defendants, Appellees.**

**Nos. 91–1136, 91–1137.**

United States Court of Appeals,
First Circuit.

Heard June 5, 1991.

Decided Sept. 12, 1991.

Leonard F. Zandrow, Jr. with whom Richard L. Neumeier, B. Deidre Brennan, Parker, Coulter, Daley & White, F. Jay Flynn, Jr., and McNamara, DeSimone & Flynn, P.A., Boston, Mass., were on brief, for plaintiffs, appellants.

Joseph M. McDonough, III with whom Timothy S. Reiniger, Thomas Quarles, and Devine, Millimet and Branch, P.A., Manchester, N.H., were on brief, for defendants, appellees.

Before BREYER, Chief Judge,
BOWNES, Senior Circuit Judge, and
CAFFREY,* Senior District Judge.

CAFFREY, Senior District Judge.

Plaintiffs have brought this action as a result of injuries suffered by Berniger in a skiing accident at Wildcat Mountain on January 3, 1988.[1] The defendants are Meadow Green Wildcat Corporation, d/b/a Wildcat Mountain ("Wildcat") and John Does I–III, the Wildcat employees in charge of mountain operations on the day of the accident. Plaintiffs allege claims for both common law negligence and breach of statutory duties under N.H.Rev.Stat.Ann. §§ 225–A:1–25 (1987). Berniger's family members also allege claims for loss of consortium and for recovery of medical expenses. The District Court for the District of New Hampshire dismissed the plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim.[2] After carefully reviewing the record and the appellants' arguments, we agree with the district court that plaintiffs' complaint does not state a valid claim, and therefore affirm.

I.

In reviewing a dismissal under Fed.R.Civ.P. 12(b)(6), we accept the factual averments of the complaint as true, and construe these facts in the light most fa-

---

* Of the District of Massachusetts, sitting by designation.

1. In addition to Randi Berniger, the plaintiffs include: Rhiannah Leigh Johnson, Ms. Berniger's daughter; Donald Johnson, a friend of Ms. Berniger; and Joseph L. Berniger and Barbara Canady, Ms. Berniger's parents.

2. The Honorable Martin F. Loughlin, Senior United States District Judge, presiding.

vorable to the plaintiffs. *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). This action arises from injuries suffered by Berniger on January 3, 1988, while skiing at Wildcat Mountain in Gorham, New Hampshire. Defendant Wildcat controlled and operated Wildcat Mountain ski area at the time of Berniger's accident. The defendant John Doe I was an employee of Meadow Green in charge of mountain operations. John Doe II was in charge of slopes and trails, and John Doe III was in charge of the ski patrol.

While skiing down Catapult Trail, Berniger encountered and struck an obstruction located on the side of the trail. According to the plaintiffs' complaint, there existed a defective and unreasonably dangerous man-made condition, hazard and obstruction. Although not specifically set forth in the complaint, the parties agree that the obstruction was a form of netting generally used as a barrier to mark hazards and to minimize the dangers posed to skiers when approaching turns and the edge of trails. After Berniger became entangled allegedly in the netting or man-made condition, she separated from her skis and fell into a large tree.

In January, 1990, the plaintiffs brought suit in the United States District Court for the District of New Hampshire, alleging that the defendants' negligent, willful, wanton, and reckless conduct and violation of N.H.Rev.Stat.Ann. ch. 225–A caused Berniger to suffer injuries while skiing. The defendants filed an answer to the complaint and a motion to dismiss for failure to state a claim upon which relief could be granted. The defendants asserted that section 225–A:24 barred the plaintiffs' claims against them. This section bars certain common law claims that result from risks inherent in the sport of skiing. The defendants further argued that the family members' loss of consortium claims should be dismissed because these claims are not recognized as a valid cause of action in New Hampshire.

By an Order dated August 28, 1990, the district court allowed the defendants' motion to dismiss. The court ruled that chapter 225–A barred plaintiffs' common law and statutory claims. The issues on appeal include whether N.H.Rev.Stat.Ann. § 225–A:24 bars the plaintiffs' common law claims, and whether the safety fence or man-made condition constitutes an "inherent risk of the sport of skiing" within the meaning of the statute. The final issue is whether the district court erred in dismissing the daughter's loss of consortium claim.

II.

■ In reviewing a dismissal under Fed. R.Civ.P. 12(b)(6), this Court must accept all factual averments as true, and draw all reasonable inferences therefrom in the plaintiffs' favor. *Correa–Martinez*, 903 F.2d at 52–53; *Dartmouth Review*, 889 F.2d at 16. Thus, it is only if the complaint, so viewed, presents no set of facts justifying recovery that we may affirm the dismissal. *Dartmouth Review*, 889 F.2d at 16. We now turn to an application of this standard to the plaintiffs' arguments raised on appeal.

■ The first issue we must address is whether the facts alleged in Count I and II of the plaintiffs' complaint make out a cognizable claim under N.H.Rev.Stat.Ann. §§ 225–A:1–25. The defendants contend that section 225–A:24 prevents a skier from maintaining any action against a ski area operator for injuries resulting from "any risk, danger or hazard inherent in the sport." The defendants further argue that the legislature did not intend to retain a common law cause of action for negligence or willful, wanton, and reckless conduct, and that any such claim should be governed by section 225–A:24. We agree.

The defendants' contention is supported by the statutory language of N.H.Rev.Stat. Ann. § 225–A:24 and the legislative intent in enacting this section. Section 225–A:24 provides in relevant part:

I. Each person who participates in the sport of skiing accepts as a matter of law, the dangers inherent in the sport,

and to that extent may not maintain an action against the operator for any injuries which result from such inherent risks, dangers, or hazards. The categories of such risks, hazards or dangers which the skier or passenger assumes as a matter of law include but are not limited to the following: variations in terrain, surface or subsurface snow or ice conditions; bare spots; rocks, trees, stumps and other forms of forest growth or debris; lift towers and components thereof (all of the foregoing whether above or below snow surface); pole lines and plainly marked or visible snow making equipment; collisions with other skiers or other persons or with any of the categories included in this paragraph.

II. Each skier and passenger shall have the sole responsibility for knowing the range of his own ability to negotiate any slope, trail or passenger tramway....

N.H.Rev.Stat.Ann. § 225–A:24. It is clear from the plain and unambiguous wording of this section that the legislature intended to place the burden of certain risks or dangers on skiers, for actions arising as a result of dangers inherent in the sport of skiing, rather than on ski area operators.[3] By the mere act of skiing, the skier accepts, as a matter of law, the risk that he or she might be injured in a manner that falls within the scope of the statute. Thus, the statute clearly indicates that in enacting chapter 225–A, the legislature intended to supersede and replace a skier's common law remedies for risks inherent in the sport of skiing.

The "Declaration of Policy" section of N.H.Rev.Stat.Ann. § 225–A:1 (1987), also adds further support of the legislature's intent to limit the liability of ski area operators. This section states in relevant part:

[I]t shall be the policy of the state of New Hampshire to define the primary areas of responsibility of skiers and other users of alpine (downhill) and nordic (cross country and ski jumps) areas, recognizing that the sport of skiing and other ski area activities involve risks and hazards which must be assumed as a matter of law by those engaging in such activities, regardless of all safety measures taken by the ski area operators.

*Id.* The New Hampshire Supreme Court in the 1968 case of *Adie v. Temple Mountain Ski Area, Inc.*, also recognized the significance of this legislative policy when it stated, "[it] is clear that the Legislature intended to specifically define limitations of recovery against an operator by a downhill skier." 108 N.H. 480, 483, 238 A.2d 738, 740–41 (1968). Therefore, in light of the legislative intent and the express terms of the statute, we hold that N.H.Rev.Stat. Ann. § 225–A:24 prohibits all common law claims against a ski area operator for injuries which result from inherent risks, dangers, or hazards associated with the sport of skiing.

■ The next issue we must address is whether Berniger's ski injuries resulted from an inherent risk associated with the sport of skiing as defined by N.H.Rev.Stat. Ann. § 225–A:24. This section cites some specific examples of the type of risks, dangers and hazards that a skier must assume as a matter of law. The hazards specifically listed "include but are not limited to the following: variations in terrain ... bare spots; rocks, trees, stumps ... lift towers and components thereof (all of the foregoing whether above or below snow surface); pole lines and plainly marked or visible snow making equipment...." By its express language, section 225–A:24 does not restrict itself only to claims resulting from those hazards or risks specifically enumerated. The phrase "includ[ing] but ... not limited to" which precedes the specification extends the statute's provisions to

---

**3.** N.H.Rev.Stat.Ann. ch. 225–A does not, however, prohibit common law claims against a ski operator that relate to injuries resulting from "negligent construction or maintenance of a tramway or any building." *See* N.H.Rev.Stat. Ann. § 225–A:25(I) (1987); *Cowan v. Tyrolean Ski Area Inc.*, 127 N.H. 397, 402, 506 A.2d 690,

693–94 (1985) (under R.S.A. 225–A:26 a plaintiff may maintain an action for common law negligence in maintenance and construction of a ski lift); *Bolduc v. Herbert Schneider Corp.*, 117 N.H. 566, 568, 374 A.2d 1187, 1188 (1977) (same).

everything embraced in that class, though not specifically enumerated. *See, e.g., United States v. Faudman,* 640 F.2d 20, 23 (6th Cir.1981); *Haas v. Breton,* 377 Mass. 591, 595, 387 N.E.2d 138, 140 (1979); *Owen of Georgia, Inc. v. Shelby County,* 648 F.2d 1084, 1091–92 (6th Cir.1981); *Brown & Root, Inc. v. Donovan,* 747 F.2d 1029, 1031–32 (5th Cir.1984); *Merrill v. Great Bay Disposal Serv., Inc.,* 125 N.H. 540, 543, 484 A.2d 1101, 1103 (1984); *Hodgerney v. Baker,* 324 Mass. 703, 706, 88 N.E.2d 625, 627 (1949) ("The literal meaning of a general term in an enactment must be limited so as not to include matters that, although within the letter of the enactment, do not fairly come within its spirit and intent."); *Federal Election Comm'n v. Massachusetts Citizens for Life, Inc.,* 769 F.2d 13, 17 (1st Cir.1985) ("includes" is usually a term of enlargement, and not of limitation, therefore, the statute governs other items, though not specifically enumerated); *United States v. Massachusetts Bay Transp. Auth.,* 614 F.2d 27, 28 (1st Cir.1980) (same). Thus, this court must determine whether Berniger's collision with the safety fence or man-made condition is sufficiently similar in nature to those specifically enumerated in section 225–A:24 to constitute a risk inherent in the sport of skiing.

■ We find that the facts alleged in the plaintiffs' complaint are of the same nature as those specified in the statute. The statute specifies that hidden and obvious man-made conditions and objects, including lift towers and components thereof (whether located above or below the surface), pole lines and snow making equipment, are risks of skiing that a skier must assume as a matter of law. Read in the context of the statute as a whole, a safety fence or other man-made condition located on the side of a trail would have the same characteristics as those specifically set forth in the statute. Moreover, courts in other jurisdictions interpreting comparable statutes have found risks or hazards similar in nature to a safety fence to be an inherent risk assumed as a matter of law by the skier. *See, e.g., Leopold v. Okemo Mountain, Inc.,* 420 F.Supp. 781, 786 (D.Vt.1976)

(chair lift tower); *Northcutt v. Sun Valley Co.,* 117 Idaho 351, 787 P.2d 1159, 1162–63 (1990) (unpadded sign post); *Schmitz v. Cannonsburg Skiing Corp.,* 428 N.W.2d 742, 744 (Mich.App.1988) (tree on ski slope). Therefore, the district court properly concluded that the safety netting or other man-made condition constituted an inherent risk of skiing, assumed as a matter of law by Berniger.

■ The plaintiffs next argue on appeal that the defendants' alleged violation of N.H.Rev.Stat.Ann. § 225–A:24(V)(c) (1987), constitutes another independent basis of recovery. They argue that Wildcat and the individual defendants qualify as "other persons" for purposes of this section. Section 225–A:24(V)(c) provides in relevant part that:

> *Responsibilities of Skiers and Passengers*
>
> V. No skier, passenger or other person shall:
>
> . . . .
>
> (c) Engage in any type of conduct which will contribute to cause injury to any other person nor shall he willfully place any object in the uphill ski track which may cause another to fall, while riding in a passenger tramway.
>
> . . . .

*Id.* As presently framed, section 225–A:24(V) contains both precise and general language. On its face, therefore, the term "other person" is susceptible to more than one meaning, and, if interpreted literally, would seemingly cover all persons, including a ski area operator. Where general words follow specific words, however, the doctrine of *ejusdem generis* warns against expansively interpreting the broad language. *See State v. Hodgkiss,* 132 N.H. 376, 379, 565 A.2d 1059, 1061 (1989) (where general words are preceded by specific words, courts interpret the scope of the general words not to exceed the class designated by the specific words); *Merrill,* 125 N.H. at 543, 484 A.2d at 1103 (same); 2A C. Sands, Sutherland Statutory Construction § 47.19, at 180 (4th ed.1986) (same). Applying this doctrine of statutory con-

struction, we construe the general words to embrace only people similar in nature to those enumerated by the preceding specific terms. *See Hodgkiss*, 132 N.H. at 379, 565 A.2d at 1061; *Merrill*, 125 N.H. at 543, 484 A.2d at 1103. Thus, we find that the legislature did not intend to include a ski area operator or its employees within the definition of the term "other person."

■ This conclusion is further supported by the title of N.H.Rev.Stat.Ann. § 225–A:24: "Responsibilities of Skiers and Passengers." It is well established that a statute's title may aid in construing any ambiguities in a statute. *See State v. Callahan*, 126 N.H. 161, 165, 489 A.2d 130, 133 (1985) (title of the statute not conclusive, but significant when considered in connection with legislative history and ambiguities); *Bourne v. Sullivan*, 104 N.H. 348, 352–53, 186 A.2d 834, 837 (1962) (same); *see also United States v. Cha*, 837 F.2d 392, 394 (9th Cir.1988) (the title of a statute may be used to resolve ambiguities); *Ciampa v. Secretary of Health & Human Servs.*, 687 F.2d 518, 525 (1st Cir.1982) (same). In this case, the title indicates the legislative intent to limit the application of this section to skiers and passengers and similar classes of individuals, which does not include a ski operator or its employees.

In light of these settled principles of statutory construction, both the plain language and the legislative intent as evinced by the title of section 225–A:24(V) and the statutory scheme as a whole support the conclusion that the legislature did not intend the term "other person" to include a ski area operator or its employees. Thus, Wildcat and its employees should not be included within section 225–A:24(V)'s coverage.

■ Plaintiffs' next argument on appeal is that the district court erred in dismissing the claims against the three individual defendants. The plaintiffs contend that the employees of Wildcat were not "ski operators" within the meaning of N.H.Rev.Stat.Ann. § 225–A:2(VI), and thus do not fall within the scope of the statute. The defendants argue, however, that the

scope of the term "ski operator" includes the operator's agents, servants and employees who exercise control of the ski area in the course of their employment. We agree with the defendants that such a narrow interpretation of the term "ski operator" would obviate the meaning of the statute.

N.H.Rev.Stat.Ann. § 225–A:2(VI) defines a "ski area operator" as:

A person who owns or controls the operation of a ski area. The word "operator" shall include the state or any political subdivision. An operator of a passenger tramway shall be deemed not to be operating a common carrier. Ski area operator shall be hereinafter referred to in this chapter as operator.

In this case, the three individual defendants fall within the scope of "ski area operator" as defined by this section because they exercised control over the operation of the ski area at the time of Berniger's accident. This interpretation of section 225–A:2(VI) also leads to a more reasonable result and effectuates the legislative purpose of limiting the liability of ski area operators for injuries to skiers resulting from risks assumed as a matter of law by the skier. This interpretation is preferable to the plaintiffs' broad interpretation, which would lead to an unreasonable result. *See Bell v. Arel*, 123 N.H. 311, 316–17, 461 A.2d 108, 111 (1983) (the terms of a statute should not be interpreted to lead to an absurd or illogical result); *McGrath v. City of Manchester*, 119 N.H. 109, 112, 398 A.2d 842, 844 (1979) (same); *see also United States v. Meyer*, 808 F.2d 912, 919 (1st Cir.1987) ("unreasonableness of the result by one among alternative possible interpretations of a statute is reason for rejecting that interpretation"). Therefore, we find that the definition of "ski area operator" encompasses Wildcat's agents and employees.

■ The remaining issue raised on appeal regarding Berniger's daughter's loss of consortium claim is moot and is not addressed in light of our disposition of the primary issues of this appeal.[4]

---

**4.** In order for a child to allege a viable claim for

loss of consortium, the defendant must first be

For the reasons stated above the district court's judgment is *affirmed.*

, held liable for the injuries suffered by the parent. *See Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 511–12, 413 N.E.2d 690, 692–93 (1980); *Diaz v. Eli Lilly & Co.,* 364 Mass. 153, 160–61, 302 N.E.2d 555, 560 (1973). Therefore, the district court correctly dismissed the loss of consortium claims against the defendants.