February 9, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1625

JAMES FINNERN, M.D.,

Plaintiff, Appellant,

v.

SUNDAY RIVER SKIWAY CORPORATION,
d/b/a/ Sunday River Ski Resort,

Defendant, Appellee.

ERRATA SHEET

The opinion issued January 29, 1993, should be corrected as
follows:

P. 15, 1. 22 reads in part: "[S]ki resorts are, if not"; it
should read in that pertinent part: "[S]ki resorts are
precisely". The corrected sentence will read: "not have come as
a surprise to Finnern. Ski resorts are precisely".

January 29, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1625

JAMES FINNERN, M.D.,

Plaintiff, Appellant,

v.

SUNDAY RIVER SKIWAY CORPORATION,
d/b/a/ Sunday River Ski Resort,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Cyr, Circuit Judge,

Bownes, Senior Circuit Judge,

and Fuste,* District Judge.

Richard L. O'Meara with whom Peter L. Murray, Murray, Plumb, &

Murray, Alan E. Richman, John J. Coates, and Breit, Best, Richman, &

Bosch were on brief for appellant.

Keith A. Powers with whom Elizabeth A. Olivier, and Preti,

Flaherty, Beliveau & Pachios were on brief for appellee.

*Of the District of Puerto Rico, sitting by designation.

FUSTE, District Judge. Plaintiff, an injured skier,

argues that a ski area operator negligently maintained a tree in

a particular area of a Maine ski slope and that the ski resort

negligently failed to post a warning sign alerting skiers to the

presence of a converging trail. Plaintiff alleges that these

negligent acts proximately caused him to suffer serious injuries

in a skiing accident.

Plaintiff originally brought a five-count negligence

action against the ski resort seeking damages. Two of the five

counts, loss of consortium and emotional distress brought on

behalf of plaintiff's spouse, were voluntarily dismissed. Based

on considerations of state law,1 the district court dismissed

two more counts alleging negligent tree location or placement and

slope arrangement for failure to state a claim on which relief

could be granted. Also, the court denied plaintiff's motion to

amend the tree placement count in order to allege additional

facts. Finally, the district court found the warning-sign count

adjudicable; however, finding no material fact was in dispute,

1The Maine legislature enacted the Skiers' and Tramway
Passengers' Responsibilities Act, 26 M.R.S.A. 488 (1991),
to limit the liability of Maine's ski area operators. The
statute provides that skiers assume risks while skiing on
the state's slopes and immunizes ski resorts from legal
responsibility for skiing injuries "unless the injury or
death [is] actually caused by the negligent operation or

maintenance of the ski area by the ski area operator, its

agents or employees." Id. (emphasis added). Although the

statute itself does not define "operation or maintenance,"
the district court found issues of negligent slope design to

be outside the scope of the statute's liability limitation
exception. Finnern v. Sunday River, Civil No. 91-0065-P-H,

slip op. at 3 (D. Me. Nov. 28, 1991).

-2-
2

the court granted summary judgment -- in favor of defendant ski

area operator. Plaintiff appeals the district court's

dismissals, denial of motion to amend, and summary judgment

decision. For reasons explained below, we affirm the district
affirm

court in all relevant respects.

I.

FACTS

James Finnern, M.D.,2 ("Finnern") and his wife, Denise

Finnern, were skiing down an intermediate slope, Dream Maker, at

Sunday River Ski Resort3 ("Sunday River") in Newry, Maine, on

March 1, 1989. The Finnerns had previously skied the Dream Maker

slope during the three days preceding the accident and had just

finished negotiating Dream Maker immediately before the fateful

run. Finnern considered his skiing ability at the time to be

somewhere between high-intermediate and low-expert levels.

As Finnern descended the slope, he allegedly saw three

relatively slow-moving or stopped skiers approximately 100 to 150

feet downslope, who apparently had entered Dream Maker from a

converging beginners' trail, Ridge Run. Since, as Finnern

claims, he was not apprised of the convergence of Dream Maker and

Ridge Run with a sign, and was unaware of the imminence of the

converging slope, he was shocked and surprised by the appearance

2Federal jurisdiction is appropriate. Finnern is a resident
of Colorado, and Sunday River is a corporation centered and
located in Maine, and the amount in controversy exceeds
$50,000. Thus, diversity jurisdiction is satisfied. 28
U.S.C. 1332.

3Also referred to as Sunday River Skiway Corporation.

-3-
3

of the Ridge Run skiers. In order not to collide with or startle

the slow-moving skiers below him, Finnern made a conscious

decision to change course. He successfully avoided the other

skiers by at least thirty feet. Finnern, however, while claiming

to be in reasonable control of his movements, came upon an

ordinary mogul that sent him into the air. The loss of control

occasioned by the mogul jump or landing resulted in his losing a

ski and, unfortunately, in his crashing into a tree near the

periphery of the slope. He came to rest after hitting the tree

and gliding a distance down the trail. Finnern sustained severe

injuries.

The tree at issue is located near the tree line and

boundary of the slope, but is a few feet nearer the trail than

the other peripheral trees. Finnern alleges that the proximity

of the tree to the edge of the trail proximately caused his

accident, and represents an issue of negligent maintenance or

operation -- actionable under state law. Finnern also claims

that the lack of a warning sign was a substantial factor leading

to his injuries. Defendant further argues that there was a

diagrammatic sign indicating an upcoming convergence.

Defendant ski area operator contends that the tree is

not unusually positioned and is like many other trees on the

slopes of Maine's many ski areas. Defendant also claims that ski

areas are exposed to very limited liability under 26 M.R.S.A.

488 (1991), and that plaintiff legally assumed certain risks when

he decided to go skiing, one of which was collision with a tree.

-4-
4

-5-
5

II.

PROCEDURAL HISTORY

The skiing accident led to three separate decisions by

the federal district court. Following the voluntary dismissal of

the two counts touching on Mrs. Finnern's claims of injury, the

district court, on November 5, 1991, dismissed the two tree-

related counts. It dismissed on the ground that state law

exempted ski resorts from liability based on slope design.

However, the court denied defendant's motion to dismiss the

warning-sign count because it raised legitimate, adjudicable

issues, namely negligent operation and maintenance of ski slopes

under 26 M.R.S.A. 488 (1991).

The second facet of this appeal stems from the district

court's February 14, 1992, denial of plaintiff's motion to amend

Count II with additional factual expositions regarding negligent

tree location. Plaintiff argues that the new information would

have prevented the court from dismissing Count II of the

complaint. The third district court decision on appeal is the

April 22, 1992, order granting defendant's motion for summary

judgment on the remaining count pertaining to the lack of a

convergence warning sign. The court found no issue of material

fact in dispute and entered judgment for the ski resort.

We are asked to review these three district court

orders but, before addressing each segment of the appeal in turn,

we discuss the state law limiting ski resort liability and, in

-6-
6

general terms, the rationale behind the assumption of risk

doctrine underlying Maine's statute.

III.

INHERENT RISKS OF SKIING AND

DISMISSAL OF SLOPE DESIGN COUNTS

A. Risks of Alpine Skiing

Maine, like many other states, has given legislative

notice that downhill snow skiing involves significant risk of

injury.4 Despite acknowledged risks, many people find

irresistible the danger inherent in the sport of skiing, one of

the many human challenges to nature's wrath.

Because skiing is dangerous, and since people enjoy and

engage in the sport in spite of the danger, the legislature of

the state of Maine, like many others, decided to enact a statute

to limit ski area operators' liability and to define the

assumption of risk, general responsibilities, duties, and

liabilities of skiers and ski resorts generally:

It is hereby recognized that skiing as a
recreational sport and the use of passenger
tramways associated therewith may be
hazardous to skiers or passengers, regardless

4See 26 M.R.S.A. 488 (1991) (Maine's law regarding skier

assumption of risk and ski resort liability limitations).
Many states have enacted laws limiting liability of ski area
operators, and defining the duties of operators and skiers.
See, e.g., Alaska Stat. 09.17.060, 09.65.135 (1992)

(relative liability of ski resorts and skiers); Colo. Rev.
Stat. 109 (1992) (duties of skiers and penalties); Colo.
Rev. Stat. 112-13 (1992) (limitations on ski area operator
liability for inherent dangers of skiing); Conn. Gen. Stat.
29-212 (1990) (skiers' assumption of risk); Idaho Code
6-1107 (1992) (limitations of liability of ski area
operators); Idaho Code 6-1109 (1992) (liability of
skiers).

-7-
7

of all feasible safety measures which can be
taken. Therefore, each skier shall have the
sole responsibility for knowing the range of
his own ability to negotiate any slope or ski
trail, and it shall be the duty of each skier
to conduct himself within the limits of his
own ability, to maintain control of his speed
and course at all times while skiing, to heed
all posted warnings, and to refrain from
acting in a manner which may cause or
contribute to the injury of himself or
others. Except as otherwise specifically
provided in this subchapter, each skier who

participates in the sport of skiing shall be
deemed to have assumed the risk of the

dangers inherent in the sport and assumed the

legal responsibility for any injury to his
person or property arising out of his
participation in the sport of skiing, unless

the injury or death was actually caused by

the negligent operation or maintenance of the

ski area by the ski area operator, its agents

or employees. Except as provided in this
section, the responsibility for collisions by
any skier while actually skiing, with any
person or object, shall be solely that of the
skier or skiers involved in collision and not
that of the ski area operator. This section
shall not prevent the maintenance of an
action against a ski area operator for the
negligent design, construction, operation or
maintenance of a tramway.

Skiers' and Tramway Passengers' Responsibilities, 26 M.R.S.A.

488 (1991) (emphasis added). An understanding of Maine's

statutory effort to limit ski area operator liability in skiing

accidents is essential in our review of the district court orders

on appeal.

B. Dismissal of Two Counts As

Design Issues Under Maine Law

The standard for reviewing a Rule 12(b)(6) dismissal is

clear: "[a] complaint is to be construed in the light most

favorable to the plaintiff; dismissal is appropriate only if 'it

-8-
8

appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief.'"

Roeder v. Alpha Indus., Inc., 814 F.2d 22, 25 (1st Cir. 1987)

(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1987)). See also

Miranda v. Ponce Federal Bank, 948 F.2d 41, 43 (1st Cir. 1991);

Feinstein v. Resolution Trust Corp., 942 F.2d 34, 37 (1st Cir.

1991); Correa-Mart nez v. Arrillaga-Bel ndez, 903 F.2d 49, 51

(1st Cir. 1990); Dartmouth Review v. Dartmouth College, 889 F.2d

13, 16 (1st Cir. 1989). If a trial court accepts plaintiff's

facts and can envision no reasonable application of the law that

would entitle plaintiff to relief, the court may rightly dismiss

the case. In our review of the district court's dismissal of

Counts II and III, we must determine whether the facts supportive

to plaintiff, the applicable law, and the interpretation of the

law justly support dismissal.

In the case at hand, defendant Sunday River moved in

the district court to dismiss all three remaining counts of

Finnern's complaint for failure to state a claim. Specifically,

Sunday River argued that Counts II and III of the complaint state

causes of action for slope design negligence and not for

maintenance or operation negligence, a statutorily significant

distinction. See 26 M.R.S.A. 488 (1991).

Section 488, Maine's statute entitled Skiers' and

Tramway Passengers' Responsibilities, greatly limits liability of

ski area operators, excepting only liability of ski resorts if

"the injury or death [is] actually caused by [] negligent

-9-
9

operation or maintenance . . . ." 26 M.R.S.A. 488 (1991)

(emphasis added). The law not only limits ski resorts'

liability, but the statute also emphasizes that skiers assume a

significant amount of risk in engaging in the inherently risky

sport of skiing.5 Section 488 clearly states that skiers should

know their abilities and the ever-present dangers inherent to

skiing. Id.

The law is clear that a Maine ski area operator like

Sunday River may only be held legally liable if its alleged

actions or inactions involved negligent operation or maintenance.

The district court interpreted this statutory provision to

"preclude[] any action for negligent design of the slopes and

trails of a ski area." Finnern v. Sunday River, Civil No. 91-

0065-P-H, slip op. at 3 (D. Me. Nov. 28, 1991) (citation

omitted). We agree as a matter of law that design questions do

not fall within the statutory operation-or-maintenance exception.

Our review of the district court's dismissal of Counts II and

III, therefore, must focus on whether the facts as seen in the

light most favorable to plaintiff support an operation-or-

maintenance exception to Maine's bar on liability for ski area

5Assumption of risk is one of the legal terms of art that is
relatively self-explanatory. Relevant to this case, Prosser
and Keeton note the following on assuming risks: "[T]hose
who participate or sit as spectators at sports and
amusements may be taken to assume the known risks of being
hurt by roller coasters, flying baseballs, hockey pucks,
golf balls, wrestlers, or such things as fireworks
explosions. Cardozo once summarized all this quite neatly:
'The timorous may stay at home.'" W. Page Keeton et al.,
Prosser and Keeton on the Law of Torts 68, at 485-86 (5th

ed. 1984) (citations omitted).

-10-
10

operators, or whether the facts as viewed through a plaintiff-

friendly lens allege a nonactionable design fault.

In regard to Counts II and III, the district court did

identify the facts most favorable to plaintiff Finnern. In fact,

the trial court accepted the facts as delineated by Finnern's

complaint, such as the location of the tree, the confluence of

the two slopes, and Finnern's controlled skiing. The district

court, however, found unnecessary a lengthy discussion of the

facts because as a matter of law, the court held that even

accepting plaintiff's factual allegations in Counts II and III,

"[a]llowing the tree in question to be present within the

traveled portion of the Dream Maker trail was obviously a design

decision rather than an aspect of operation or maintenance."

Finnern v. Sunday River, Civil No. 91-0065-P-H, slip op. at 3 (D.

Me. Nov. 5, 1991).

We agree as a matter of law that the tree's position as

described by plaintiff's facts, along with the slope's allegedly

defective form and angle, are actually averments implicating ski

area design, and not operation or maintenance.6 Examples of

6We note this case appears to be unlike a recent decision
from the same district in which the court denied a motion to
dismiss in a context of a set of facts similar to the ones
in this case. See S nchez v. Sunday River Skiway Corp.,

1992 U.S. Dist. LEXIS 15616, (D. Me. Sept. 28, 1992). We
compare the two cases without passing any judgment on
S nchez; we have only seen the district court opinion and

not a page of the trial record.
In S nchez, the ski resort left a tree stump intact

thirty feet into the skiing area of a slope. On the motion
for dismissal, the district court determined that the relief
asked for could conceivably be granted. The motion for
dismissal was denied since a legitimate argument could be

-11-
11

negligent operation or maintenance would include placing a snow

blower or other machine in a precarious position on a slope

without proper warning, or failing to notify skiers that a

particular slope had been closed due to poor or dangerous trail

conditions. But tree placement along the periphery of slopes,

trail direction, curvature, and degree of inclination, as well as

myriad other ordinary properties of ski areas, are presumptively

design issues. If tree placement or location along the periphery

of trails were actionable, ski area operators and skiers

themselves might find themselves out in the cold. As a

California appeals court observed in a tree collision case:

The tree itself provided a warning to
plaintiff of the implicit danger of a
collision with it. A fortiori, [the ski
resort] was under no duty to remove it. One
could ask, if there were a duty to remove
trees along the edges of ski runs, "which
trees?" Such a solution, if followed to its
logical conclusion . . . would finally lead
to cutting down every tree on the mountain.

Danieley v. Goldmine Ski Assocs., 218 Cal. App. 3d 111, 122

(1990). Finding the location of the tree in question and the

layout of the surrounding slope to be design issues as a matter

of law, we need not reach an assessment of defendant's negligence

in implementing those decisions. Sunday River cannot be held

liable for such decisions or actions under Maine law.

made, according to the district court, that maintenance and
operation decisions should have caused the stump's removal
or marking. In this case, however, maintenance purposes

have not caused a partial removal of the tree, as may have
been the case with the stump scenario in S nchez.

-12-
12

We affirm the district court's dismissal of Counts II

and III for failure to state a claim upon which relief could be

granted pursuant to Maine law. 26 M.R.S.A. 488 (1991).7

C. Denial of Motion to Amend Count II

A party may amend "as a matter of course" in certain

circumstances, "[o]therwise a party may amend the party's

pleading only by leave of court or by written consent of the

adverse party; and leave shall be freely given when justice so

requires." Fed. R. Civ. P. 15(a).

Our standard for reviewing district court decisions

regarding denials of motions to amend is widely known and

applied. Unless we find an abuse of discretion in a trial

court's decision to deny a motion to amend, we defer to the

district court's superior ability to weigh the potential

amendments against the existing factual record and legal context.

The decision to grant or deny a motion to amend pleadings is

rightly "left to the broad discretion of the district court."

Coyne v. Somerville, 972 F.2d 440, 446 (1st Cir. 1992). However,

"a district court's denial of a chance to amend may constitute an

abuse of discretion if no sufficient justification appears. See

Foman v. Davis, 371 U.S. 178, 182 (1962)." Correa-Mart nez v.

7We recently faced a similar set of issues in Berniger v.

Meadow Green-Wildcat Corp., 945 F.2d 4 (1st Cir. 1991). In

that case, inter alia, we upheld the dismissal of a

plaintiff's claim for injuries sustained in a collision with
a man-made obstruction on the side of a skiing trail. A New
Hampshire statute bars suits against ski area operators for
"inherent risk" accidents in the sport of skiing. See N.H.

Rev. Stat. Ann. Ch. 225-A:24.

-13-
13

Arrillaga-Bel ndez, 903 F.2d 49, 59 (1st Cir. 1990) (citing Foman

v. Davis, 371 U.S. 178, 182 (1962)) (emphasis added).

Plaintiff Finnern argues that he should have been able

to amend Count II of his complaint to provide additional factual

information. Finnern contends that the information may have

persuaded the district court that as a matter of law the tree

placement issue could reasonably be interpreted as an operation

or maintenance problem and therefore was better left for a trial

on the merits rather than a court-ordered dismissal.8 In

denying plaintiff's motion to amend, the district court

succinctly stated that the "amendments, even if permitted, would

not change the [c]ourt's decision to dismiss Count II." Finnern

v. Sunday River, Civil No. 91-0065-P-H, slip op. at 1 (D. Me.

Feb. 14, 1992).

The district court's denial of Finnern's motion

indicates that the proposed amendments, in the judgment of the

trial court, provided only additional support for the facts and

arguments already set forth by the pleadings. In other words,

more design information about the placement or location of the

tree or the form of the slope would still fail to state a

colorable claim under section 488 of the Maine law. As we noted

8Finnern attempted to cure his complaint by alleging that
the tree at issue was marked with a blue stripe indicating
it was a "land boundary" tree. Finnern suggested that part
of the ski resort's land was leased and the other part owned
by the resort. If the tree with which Finnern collided had
been deliberately left on the slope for the purpose of
providing a boundary marker between two distinct tracts of
land, Finnern argues the tree's placement was an operations
or maintenance concern and not a design matter.

-14-
14

in Correa-Mart nez, 903 F.2d at 59, "[w]here an amendment would

be futile or would serve no legitimate purpose, the district

court should not needlessly prolong matters." After examining

the record and relevant law in the case at hand, we find nothing

approaching an abuse of discretion on the part of the district

court in denying the motion to amend. We affirm the denial of
affirm

plaintiff's motion to amend Count II.

IV.

REVIEW OF THE DISTRICT COURT'S GRANT OF

SUMMARY JUDGMENT ON COUNT I

Having addressed the appeal of the dismissal of Counts

II and III and of the denial of the motion to amend Count II, we

lastly review Finnern's appeal of the district court's grant of

summary judgment on the warning-sign count in favor of Sunday

River. Our review of a district court's grant of summary

judgment is plenary. See Griggs-Ryan v. Smith, 904 F.2d 112, 115

(1st Cir. 1990); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st

Cir. 1990), later proceeding Garside v. Osco Drug, Inc., 764 F.

Supp. 208 (D. Mass. 1991), rev'd, Garside v. Osco Drug, Inc.,

1992 U.S. App. LEXIS 24370 (1st Cir. 1992). However, because of

the clarity of the disposition in this case, we need not repeat

every detail of the proceedings below, other than the factual and

legal findings crucial to a judgment on this segment of Finnern's

appeal.

The appropriate standards for granting and reviewing

summary judgments are clear. "Summary judgment is appropriate

where 'the pleadings, depositions, answer to interrogatories, and

-15-
15

admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law.'

Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986); Aponte-Santiago v. L pez-Rivera, 957 F.2d

40 (1st Cir. 1992)." Garside v. Osco Drug, Inc., 1992 U.S. App.

LEXIS 24370, at *1-2 (1st Cir. Sept. 30, 1992).

We, like the district court, find no material fact in

dispute in regard to Count I. In brief, Finnern claims to have

been in control of his skiing on the Dream Maker run. He had

sufficient time to consider in a rational manner his options upon

seeing slow-moving skiers below him.9 In fact, he had at least

100 to 150 feet advance notice of the positions of the Ridge Run

skiers. He made a considered judgment to ski around them so as

not to startle them. Finnern not only succeeded in avoiding the

other skiers, but he also did so by at least thirty feet.

As Maine law dictates, other skiers on the slopes of

the state's ski areas are an inherent risk assumed by skiers. 26

M.R.S.A. 488 (1991). With the facts that we consider material

to a decision on the warning-sign charge of Count I -- even with

the facts as presented by Finnern -- we agree with the district

court's grant of summary judgment for Sunday River. A warning

sign would have afforded Finnern no significant additional notice

of the presence of the Ridge Run skiers, and Sunday River had no

9The exact position of the Ridge Run skiers is a fact in
dispute; however, it is immaterial to our decision here.

-16-
16

duty to warn Finnern of each and every inherent danger on the

slopes.

The appearance of the other skiers on Dream Maker

should not have come as a surprise to Finnern. Ski resorts are

precisely social, recreational areas with many downhill skiers.

Maine's liability-limiting statute reflects this fact. We,

therefore, cannot envision a judge or jury who could reasonably

find that Finnern's accident was a result of, or partially caused

by, the lack of a convergence sign on Dream Maker. While it is

unfortunate that Finnern's choice of path around the Ridge Run

skiers led him to collide with a tree, Sunday River is not

legally responsible. We affirm the grant of summary judgment in
affirm

favor of defendant.

V.

CONCLUSION

We agree with the district court that no material fact

is in dispute with respect to Count I, the warning-sign charge.

In addition, we believe the district court correctly granted

defendant's summary judgment motion as to Count I in favor of

defendant Sunday River.

We also find no actionable, negligent behavior on the

part of the ski resort in its operation or maintenance of Dream

Maker. Plaintiff Finnern did not meet his statutory burden of

demonstrating that an action for maintenance or operation

negligence existed as required by relevant law in the state of

Maine. With or without the amendments to the complaint,

-17-
17

plaintiff makes a slope design argument in Counts II and III

according to section 488 and reasonable judicial inferences. Ski

area operators in Maine are simply not liable for the design of

their slopes under state law. We, therefore, affirm the district
affirm

court's decisions.

So Ordered.

-18-
18