McDONALD MOBILE HOMES, INC., *et al.,* Plaintiffs-Appellants, *v.* THE VILLAGE OF SWANSEA, Defendant-Appellee.

Fifth District   No. 76-158

Opinion filed December 30, 1977.

Dixon, Starnes, Nester & McDonnell, of Belleville (Joseph B. McDonnell, of counsel), for appellants.

John B. Gunn, of Belleville (Walker & Williams, P. C., of counsel), for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiffs appeal from a judgment of the circuit court of St. Clair County upholding the constitutionality of an ordinance of the Village of Swansea establishing rates for the use of the municipal sewer system. The issues raised on appeal are whether the ordinance imposes arbitrary and unreasonable rates upon plaintiff's businesses, whether the ordinance unfairly discriminates against the plaintiffs, and whether certain

provisions of the ordinance allowing for adjustments in individual bills for water service and sewer use are unconstitutionally vague and indefinite.

Plaintiffs are owners and operators of certain mobile home courts, motels and apartments located within the Village of Swansea. In December 1962, defendant Village enacted an ordinance providing for the sale of revenue bonds to finance the construction of a sewer system pursuant to section 11—141—1 *et seq.* of the Illinois Municipal Code (Ill. Rev. Stat. 1961, ch. 24, par. 11—141—1 *et seq.*) A year later the Village enacted an ordinance establishing certain charges for the use of the sewer system under authority of section 11—141—7 (Ill. Rev. Stat. 1961, ch. 24, par. 11—141—7). These charges were based upon the amount of water used each quarter with a minimum charge of $12 per quarter. Residential, commercial and industrial users were all charged according to the same quarterly rate, which ranged from a minimum of $12 for the first 699 cubic feet of water used to 35 cents per cubic foot for any amount used over 8600 cubic feet. Under this inverted rate structure, large consumers of water such as industrial plants are charged according to a lower overall effective rate than small consumers such as individual residences. Under the 1963 ordinance, owners of apartments, hotels and other establishments with multiple units were charged according to the number of water meters in operation at each establishment. Thus, multi-unit establishments with a single meter were treated as single consumers.

On August 1, 1974, the Village enacted Ordinance No. 536 which amended the rate structure applicable to multi-unit establishments with only one water meter. The ordinance provides in pertinent part:

"32.44 *Multiple Units.* If the Premises contain multiple residential units, such as apartment houses, motels, hotels, trailer courts or parks, mobile home courts or parks, or commercial units having a separate facility for using water service, and do not have a separate meter for each unit, then the owner and/or person in possession of the units shall pay a minimum sewer charge of Twelve ($12.00) dollars per quarter for each unit, and shall be billed for sewer service based on a rate computed as follows:

Divide the number of units connected to any one meter into the total quarterly reading of the meter in cubic feet, and then apply the rates set forth in 32.41 (1) herein to each of the units as if each unit had been on an individual meter, and the consumption of water in cubic feet for a unit had been that amount resulting from said division."

Under Ordinance No. 536 owners and operators of multi-unit establishments with a single water meter are charged as if each unit of their establishments were equipped with a meter. In other words, individual living units, whether apartments, motel rooms, or mobile

homes, have been placed in the same legislative classification and accorded the same treatment as single-family residences. Thus, plaintiffs' multiple-unit establishments are no longer treated as single water consumers or sewer users. Because of the inverted rate structure under which the cost per cubic foot of water decreases with increased consumption, plaintiffs must pay considerably more in user charges under the present ordinance than they did under the 1963 ordinance. McDonald Mobile Homes, for example, now must pay almost 3½ times the amount it was required to pay under the previous ordinance. The table below compares the amount McDonald Mobile Homes was charged under Ordinance No. 536 for the use of 184,300 cubic feet of water to the amount which would have been charged for the same level of consumption under the old ordinance:

McDONALD MOBILE HOMES
Total Water Usage:   184,300 cu. ft.

| CHARGE UNDER 1963 ORDINANCE | | CHARGE UNDER ORDINANCE NO. 536 | |
|---|---|---|---|
| For first 700 ft.: | $ 12.00 | Avg. cub. ft. use 1739 | |
| For next 2100 ft.: | 21.00 | For first 700 ft.: | $   12.00 |
| For next 2700 ft.: | 16.20 | remaining 1039 ft.: | 10.39 |
| For next 3100 ft.: | 12.40 | Charge against each unit: | 22.39 |
| Remaining 175,700 ft.: | 614.95 | Multiply by 106 units | 106 |
| TOTAL | $676.55 | TOTAL | $2,373.34 |

Plaintiffs contend that the rates imposed on their businesses by Ordinance No. 536 are arbitrary, unreasonable and confiscatory. It is claimed that the ordinance is based on an unwarranted assumption that a household's or business's water consumption and sewer usage are identical and that the rate fixed does not bear a reasonable relationship to the service provided. Plaintiffs also assert that the ordinance unreasonably discriminates against them since plaintiffs' businesses are charged on a different basis than other commercial establishments.

■■  A judicial determination as to the reasonableness of a municipal ordinance should be based on a consideration of the objectives of the particular ordinance, the means provided for accomplishing those objectives, and the circumstances surrounding its adoption. However, a municipal ordinance enacted under competent statutory authority is presumptively valid and the burden of proving its invalidity is on the party challenging the ordinance. (8 Ill. L. & Prac. *Cities, Villages & Other*

*Municipal Corporations* §149 (1954).) Moreover, the presumption that a properly enacted ordinance is reasonable and valid can only be overcome by a clear and affirmative showing that it is unreasonable, oppressive, arbitrary, capricious or unnecessary. *City of Evanston v. Ridgeview House, Inc.,* 64 Ill. 2d 40, 66, 349 N.E.2d 399.

■■  Plaintiffs contend that the ordinance fixing use charges for sewer service based on water consumption is founded on the unwarranted assumption that water use and sewer use are identical. Defendant Village argued at trial that the only practical method for the Village to determine sewer use was to rely on the already existing system for measuring water use. Although the installation of a separate monitoring system for sewer use might be technically possible, the high costs involved rendered the establishment of such a system practically impossible. As defendant noted on appeal, there is probably not a single municipality in the entire State of Illinois which does not base charges for sewer use on water consumption. In our review of the challenged ordinance, we are not concerned with, nor do we have the authority to determine, the propriety, necessity or expediency of the decision to base sewer use charges on water use, but are interested only in whether this action was arbitrary and unreasonable. (See *Hunt v. City of Peoria,* 30 Ill. 2d 230, 234, 145 N.E.2d 719; *Baltis v. Village of Westchester,* 3 Ill. 2d 388, 402-03, 121 N.E.2d 495.) While we agree with plaintiffs that defendant's method for determining sewer use is not scientifically precise, we believe there is a substantial correlation between water consumption and sewer use and that the Village's scheme for assessing sewer use charges is a reasonable exercise of its legislative authority.

Plaintiffs also contend that the ordinance is arbitrary and confiscatory in that it imposes a rate on plaintiff's sewer use of two to four times higher than that charged under the previous ordinance. Of course, the fact that plaintiffs must now pay considerably more for using the Village sewer system does not in itself show that the new rate scheme is arbitrary and confiscatory. In order to overcome the presumption of legislative validity, plaintiffs must show that the rate scheme is clearly arbitrary and without a rational basis. In this regard plaintiffs argue that the rates charged do not bear a reasonable relationship to the service provided and that the distinction between their businesses and other commercial users is arbitrary and unreasonable.

Municipalities are granted the statutory authority to operate sewer systems and to establish rates and charges for financing the operation of those systems. Ill. Rev. Stat. 1975, ch. 24, par. 11—141—1 *et seq.*

> "The corporate authorities of any municipality that owns and operates or that may hereafter own and operate a sewerage system constructed or acquired under the provisions of any law of this

state may make, enact, and enforce all needful rules, regulations, and ordinances for the improvement, care, and protection of its sewerage system* * *.

* * * Where bonds are issued as provided in Sections 11—141—2 and 11—141—3, the corporate authorities shall establish rates or charges as provided in this section, and these charges or rates shall be sufficient at all times to pay the cost of operation and maintenance, to provide an adequate depreciation fund, and to pay the principal of and interest upon all revenue bonds issued under Sections 11—141—2 and 11—141—3." Ill. Rev. Stat. 1975, ch. 24, par. 11—141—7.

Plaintiffs claim that there is no evidence in the record regarding the costs of operating and maintaining the sewer system to justify the imposition of user charges which are two to four times greater than plaintiffs would pay if they were charged under the rate scheme of the 1963 ordinance. The essence of plaintiff's argument, however, is not that the revenue derived from the new rate scheme is in excess of that amount necessary to operate and maintain the sewer system, but is that the ordinance imposes a different rate on plaintiffs than on other water and sewer users similarly situated. Plaintiffs argue that the Village's determination that each unit within a multi-unit establishment is to be treated as an individual water consumer and sewer user is an arbitrary distinction between plaintiff and other commercial establishments.

■■ A municipality may establish various distinctions between persons and things in order to achieve a particular legislative objective. Such legislative classifications, however, cannot be arbitrary but must be reasonably related to the purposes of the particular ordinance. (*Chicago Real Estate Board v. City of Chicago,* 36 Ill. 2d 530, 548-49, 224 N.E.2d 793.) A legislative classification is never held to be arbitrary or unreasonable where there is any rational basis for the distinction which reasonably relates to the purposes to be accomplished by the enactment. *Village of Roxana v. Costanzo,* 41 Ill. 2d 423, 243 N.E.2d 242.

Plaintiffs initially contend that the record was barren of any cost justifications for the distinction between plaintiffs' businesses and other commercial establishments. The principal purpose for enacting Ordinance No. 536, however, was not to increase revenue but was to equalize the distribution of the costs of operating a sewer system. The ordinance applies the same user charge to all residential units whether they be single-family homes, apartments, motel rooms or mobile homes. Equalizing the distribution of operating costs is clearly a proper legislative objective and the classification of apartments, motels and mobile home parks as multiple residential units is directly related to that objective. Moreover, apartments, motels, and mobile home parks are

predominately residential in character and certainly a rational distinction may be drawn between these establishments and other commercial facilities. Plaintiffs maintain, however, that this distinction is arbitrary because two nursing homes in the Village of Swansea are not charged on the same basis as are plaintiffs' establishments even though they are similarly situated. There was conflicting evidence on whether these two nursing homes contained individual living units. Plaintiff James McDonald testified that one of the nursing homes had at least 100 units, each equipped with a lavatory and generally occupied by two patients. A trustee on the Village Board of Swansea testified that the patients' rooms had separate water service facilities, but also stated that these rooms were for patient care and were not individual living quarters.

■■ Courts will not interfere with a legislative classification if the reasonableness of the classification is fairly debatable. (*Village of Glenview v. Van Dyke,* 98 Ill. App. 2d 118, 123, 240 N.E.2d 354.) We believe it was a reasonable exercise of legislative discretion for the Village Board to draw a distinction between motels, apartments, and mobile home parks which provide residential units for independent families and persons and the nursing homes which offer living quarters and professional services for individuals who are unable to care for themselves.

Plaintiffs' final contention on appeal is that Ordinance No. 536 is unconstitutionally vague and indefinite because it vests the Village Board of Trustees with the arbitrary authority to grant exemptions from the general application of the ordinance. The ordinance establishes the following appeals process for owners and operators of multiple-unit establishments who seek adjustments in their sewer use charges:

> "If the owner, or person in possession, of premises having multiple units, one or more of which have an appreciably higher consumption of cubic feet of water than the other units so that he would be entitled to a lesser total bill than if each unit is billed as aforesaid, he must provide the Sewer Collector with reasonable evidence as to the appreciable difference in water consumption so that a justifiable basis exists for an adjustment to be made in the bill. The evidence shall be provided within sixteen (16) days from the date of the original bill and shall be submitted for the consideration of the Village Board of Trustees and the decision of the Board shall be final.* * *"

Plaintiffs contend that if the ordinance vests the sewer collector with the authority to determine what is "reasonable evidence," it is void as an unlawful delegation of legislative authority to a ministerial officer. We believe, however, that the ordinance clearly reserves for the Board of Trustees the determination of whether reasonable evidence of a

justifiable basis for a billing adjustment has been presented. The relevant question, then, is whether the discretion vested in the Board to grant adjustments is arbitrary and unreasonable.

Plaintiffs' principal objection appears to be that since the terms "reasonable evidence" and "justifiable basis" are not defined in the ordinance, there are not adequate standards governing the exercise of the Board's discretion. We do not agree that the discretion vested in the Board to allow adjustments in sewer use charges is unbridled and arbitrary. The Board's interpretation of what is reasonable evidence of a justifiable basis for an adjustment in a particular case must be made with reference to the purposes of the adjustment provisions of the ordinance. Ordinance No. 536 was designed to equalize sewage charges among residential users. The ordinance allows the owner or operator of a multi-unit establishment to obtain a billing adjustment if a bill does not accurately assess the water consumption of each individual unit of a multi-unit establishment as required by the ordinance. Thus, reasonable evidence of a justifiable basis for a billing adjustment is evidence which shows that a multi-unit establishment is not being charged on the basis of individual unit water consumption as was intended by the ordinance. We note that three of the four plaintiffs in this case testified that they have taken advantage of this provision to obtain deductions in their user charges for billing periods during which some of their individual units have been unoccupied. Thus, when a multi-unit establishment has vacancies, the Village reduces the number of residential units which it divides into the total water usage and thereby reduces the user charges in accordance with the purposes of the ordinance.

■■ We believe the adjustment provision of the ordinance provides adequate standards for the exercise of the Board's discretion and is not unconstitutionally vague and indefinite. A municipal ordinance need not set forth in complete detail every step essential to its application and enforcement. (*Brown v. City of Chicago,* 42 Ill. 2d 501, 250 N.E.2d 129.) Ordinance No. 536 contains sufficient controls and standards to insure that the discretion to allow billing adjustments is not exercised in an arbitrary or capricious manner.

We hold that plaintiffs have not satisfied their burden of showing that the classification of their businesses and multiple unit residential establishments and resultant increase in sewer user charges was clearly arbitrary, unreasonable or confiscatory in violation of the Federal and State constitutions. We therefore affirm the judgment of the trial court upholding the constitutionality of Ordinance No. 536.

Affirmed.

EBERSPACHER, P. J., and CARTER, J., concur.