992 So.2d 164 (2008)
BAY COUNTY, Florida, Appellant,
v.
TOWN OF CEDAR GROVE, etc., et al., Appellees.
Bay County, Florida, Appellant,
v.
Town of Cedar Grove, etc., et al., Appellees.
Nos. SC07-1572, SC07-1574.
Supreme Court of Florida.
September 18, 2008.
*165 Terrell K. Arline, Bay County Attorney, Panama City, Florida, for Appellant.
Mark G. Lawson, Theresa B. Proctor, Christopher B. Roe, and Frederick J. Springer of Bryant Miller Olive, P.A., Tallahassee, Florida, Michael S. Davis of Bryant Miller Olive, P.A., Tampa, Florida, and Michael S. Burke of Burke, Blue, Hutchinson, Walters, and Smith, P.A., Panama City, Florida; and William A. Lewis, Chief Assistant State Attorney, Fourteenth Judicial Circuit, Panama City, Florida, for Appellees.
PER CURIAM.
We have before us appeals from two final judgments validating tax-increment-financed bonds proposed for issuance by *166 the Town of Cedar Grove ("Cedar Grove") pursuant to part III of chapter 163, Florida Statutes (2006), referred to as the Community Redevelopment Act.[1] One judgment validates bonds proposed for the Core redevelopment area, while the other validates bonds proposed for the Brannonville redevelopment area. We affirm both judgments.

I. FACTUAL AND PROCEDURAL BACKGROUND
On February 27, 2001, Cedar Grove adopted Resolution 2001-3 establishing the Cedar Grove Community Redevelopment Agency. The resolution also identifies the Brannonville redevelopment area, states that the area contains blighted conditions, and includes a finding of a need for a community redevelopment agency.
Over six years later, on March 27, 2007, Cedar Grove adopted Resolution 07-001, which identifies the Core redevelopment area, states that the area contains blighted conditions, and includes a finding of necessity. Also, on March 27, 2007, Cedar Grove adopted Resolution 07-002 ratifying its previous determination that the Brannonville redevelopment area met the blighted criteria described in section 163.340(8), Florida Statutes (2000). Then, on May 22, 2007, Cedar Grove adopted resolutions approving redevelopment plans for the Core and Brannonville redevelopment areas.
Thereafter, on May 29, 2007, Cedar Grove adopted Ordinance 07-421, which establishes a community redevelopment trust fund for the Core area and authorizes the use of tax increment financing in order to fund the trust. Also, on May 29, 2007, Cedar Grove adopted Ordinance 07-422 establishing a community redevelopment trust fund for the Brannonville area and authorizing the use of tax increment financing to fund that trust. Both ordinances provide that "[t]here shall be paid into the Fund each year by each of the `taxing authorities' ... levying ad valorem taxes within the [area] a sum equal to ninety-five percent (95%) of the incremental increase in ad valorem taxes levied each year by that taxing authority." Ordinance 07-421, § 4; Ordinance 07-422, § 4.
Finally, that same day, Cedar Grove enacted two bond resolutions. Resolution 07-007 authorizes Cedar Grove to issue bonds not exceeding $41,835,609 for the purpose of financing capital projects in the Core redevelopment area, while Resolution 07-011 authorizes Cedar Grove to issue bonds not exceeding $23,688,708 for the purpose of financing capital projects in the Brannonville redevelopment area.
Absent Cedar Grove's approval of supplemental ordinances, the tax increment revenues deposited into the trust funds are the only source of revenues pledged to repay the bonds. See Resolution 07-007, art. I, § 1.01; Resolution 07-011, art. I, § 1.01.[2] However, the bond resolutions emphasize that government taxing power is not pledged. Specifically, section 4.01 of both resolutions provides that the bonds are not "general obligations or indebtedness of [Cedar Grove] as `bonds' within the meaning of any constitutional or statutory *167 provision." Rather, the bonds are special obligations "payable solely from and secured by a lien upon and pledge of the Pledged Funds." Resolution 07-007, art. IV, § 4.01; Resolution 07-011, art. IV, § 4.01. The bond resolutions then explain that no bondholder "shall ever have the right to compel the exercise of the ad valorem taxing power of the State, Bay County, or any other governmental entity." Id.
On May 30, 2007, Cedar Grove filed complaints seeking validation of the Core and Brannonville bond proposals. Bay County intervened in the proceedings, and the State required strict proof of the matters alleged but did not otherwise object to validation. After conducting a consolidated hearing, the circuit court entered final judgments validating the bond proposals. Bay County appeals those final judgments.

II. DISCUSSION
Before this Court, Bay County appeals the circuit court's conclusion that section 163.346, Florida Statutes (2006), does not require two public readings for resolutions adopted pursuant to the Community Redevelopment Act. In addition, Bay County contests the circuit court's conclusion regarding the constitutionality of the proposed tax-increment-financed bonds.[3] As explained below, we affirm the trial court's conclusions. We address each issue in turn.
At the outset, we note that a trial court must make three determinations during a bond validation proceeding: (1) whether the public body has the authority to issue the subject bonds; (2) whether the purpose of the obligation is legal; and (3) whether the authorization of the obligation complies with the requirements of law. City of Gainesville v. State, 863 So.2d 138, 143 (Fla.2003). On appeal, this Court reviews the "trial court's findings of fact for substantial competent evidence and its conclusions of law de novo." Id. (citing City of Boca Raton v. State, 595 So.2d 25, 31 (Fla.1992); Panama City Beach Cmty. Redev. Agency v. State, 831 So.2d 662, 665 (Fla.2002)).

A. Two Readings
Bay County argues that section 163.346 of the Community Redevelopment Act requires that resolutions adopted pursuant to the Act be read twice. "Statutory interpretation is a question of law subject to de novo review." BellSouth Telecomm., Inc. v. Meeks, 863 So.2d 287, 289 (Fla. 2003). Because section 163.346 incorporates only the public notice requirements of sections 166.041(3)(a) and 125.66(2), Florida Statutes (2006), we conclude that two readings are not required for municipal resolutions adopted pursuant to the Community Redevelopment Act.
Section 163.346 of the Community Redevelopment Act reads:
Before the governing body adopts any resolution or enacts any ordinance required under s. 163.355, s. 163.356, s. 163.357, or s. 163.387; creates a community redevelopment agency; approves, adopts, or amends a community redevelopment plan; or issues redevelopment revenue bonds under s. 163.385, the governing body must provide public notice of such proposed action pursuant to s. 125.66(2) or s. 166.041(3)(a)....
(Emphasis added.) And section 166.041(3)(a), which applies to municipalities, provides:

*168 Except as provided in paragraph (c), a proposed ordinance may be read by title, or in full, on at least two separate days and shall, at least 10 days prior to adoption, be noticed once in a newspaper of general circulation in the municipality. The notice of the proposed enactment shall state the date, time, and place of the meeting; the title or titles of proposed ordinances; and the place or places within the municipality where such proposed ordinances may be inspected by the public. The notice shall also advise that interested parties may appear at the meeting and be heard with respect to the proposed ordinance.
(Emphasis added.) Finally, section 125.66(2), which applies to counties, provides in relevant part:
(a) ... The board of county commissioners at any regular or special meeting may enact or amend any ordinance, except as provided in subsection (4), if notice of intent to consider such ordinance is given at least 10 days prior to said meeting by publication in a newspaper of general circulation in the county. A copy of such notice shall be kept available for public inspection during the regular business hours of the office of the clerk of the board of county commissioners. The notice of proposed enactment shall state the date, time, and place of the meeting; the title or titles of proposed ordinances; and the place or places within the county where such proposed ordinances may be inspected by the public. The notice shall also advise that interested parties may appear at the meeting and be heard with respect to the proposed ordinance.
Read in light of the referenced statutory provisions, section 163.346 is clear and unambiguous. Section 163.346 specifies that the governing body of a municipality or county must give public notice and mail a timely notice to each relevant taxing authority before adopting resolutions pursuant to the Community Redevelopment Act. This public notice is subject to the standards set forth in section 166.041(3)(a) or 125.66(2). Although sections 166.041(3)(a) and 125.66(2) include additional procedures for enacting municipal and county ordinances respectively, they contain the identical public notice requirements. Both require (1) that at least ten days' notice be given; (2) that notice be published in a newspaper of general circulation in the pertinent county or municipality; (3) that a copy of the published notice be available for inspection by the public; (4) that the notice state the date, time, and place of the meeting; the title or titles of the proposed ordinance; and the place or places where the proposed ordinance may be inspected by the public; and (5) that the notice advise that interested parties may appear and be heard at the meeting. §§ 166.041(3)(a); 125.66(2)(a), Fla. Stat.
Because section 163.346 incorporates only the public notice requirements of sections 166.041(3)(a) and 125.66(2), we find that section 163.346 does not impose a two-reading requirement for resolutions adopted pursuant to the Community Redevelopment Act. As a result, Cedar Grove was not required to conduct two readings at two public meetings when enacting its redevelopment resolutions.

B. Constitutionality of Tax Increment Financing
Lastly, Bay County argues that the proposed tax-increment-financed bonds violate the referendum requirement of article VII, section 12 of the Florida Constitution. "The determination of a statute's constitutionality and the interpretation of a constitutional provision are both questions of law reviewed de novo by this Court." Fla. Dep't of Rev. v. City of Gainesville, *169 918 So.2d 250, 256 (Fla.2005). As explained below, we conclude that the proposed bonds do not violate article VII, section 12.
In State v. Miami Beach Redevelopment Agency, 392 So.2d 875 (Fla.1980), this Court held that it was permissible for a local government to use the tax increment as one of the sources of debt service on outstanding bonds where the taxing power had been disclaimed and no lien could attach until the funds were deposited into the trust account. In other words, we held that tax increment financing does not run afoul of the referendum requirement of article VII, section 12 so long as ad valorem taxing power is not pledged. In so holding, this Court stated the following:
[T]here is nothing in the constitution to prevent a county or city from using ad valorem tax revenues where they are required to compute and set aside a prescribed amount, when available, for a discreet [sic] purpose. The purpose of the constitutional limitation is unaffected by the legal commitment; the taxing power of the governmental units is unimpaired. What is critical to the constitutionality of the bonds is that, after the sale of bonds, a bondholder would have no right, if the redevelopment trust fund were insufficient to meet the bond obligations and the available resources of the county or city were insufficient to allow for the promised contributions, to compel by judicial action the levy of ad valorem taxation. Under the statute authorizing this bond financing the governing bodies are not obliged nor can they be compelled to levy any ad valorem taxes in any year. The only obligation is to appropriate a sum equal to any tax increment generated in a particular year from the ordinary, general levy of ad valorem taxes otherwise made in the city and county that year. Issuance of these bonds without approval of the voters of Dade County and the City of Miami Beach, consequently, does not transgress article VII, section 12.
Id. at 898-99.
In State v. School Board of Sarasota County, 561 So.2d 549 (Fla.1990), this Court reiterated the holding in Miami Beach as follows:
In State v. Miami Beach Redevelopment Agency, 392 So.2d 875 (Fla.1980), we interpreted the words "payable from ad valorem taxation" in article VII, section 12 and held that a referendum is not required when there is no direct pledge of the ad valorem taxing power. We noted that although contributions may come from ad valorem tax revenues: "What is critical to the constitutionality of the bonds is that, after the sale of the bonds, a bondholder would have no right, if [funds] were insufficient to meet the bond obligations ... to compel by judicial action the levy of ad valorem taxation.... [T]he governing bodies are not obliged nor can they be compelled to levy any ad valorem taxes in any year." Id. at 898-99. The agreements here, as in Miami Beach, although supported in part by ad valorem revenues, expressly provide that neither the bondholders nor anyone else can compel use of the ad valorem taxing power to service the bonds.
Id. at 552 (alterations in original); see also Strand v. Escambia County, No. SC06-1894. 992 So.2d 150, 2008 WL 4240151 (Fla. Sept. 18, 2008) (expressly declining to recede from Miami Beach).
In the present case, the proposed bonds conform to the tax increment financing mechanism we approved in Miami Beach. Cedar Grove's bond resolutions provide that no bondholder "shall ever have the right to compel the exercise of the ad valorem taxing power of the State, Bay *170 County, or any other governmental entity." Resolution 07-007, art. IV, § 4.01; Resolution 07-011, art. IV, § 4.01. The bond resolutions also explain that the bonds are "payable solely from and secured by a lien upon and pledge of the Pledged Funds." Id. Thus, Cedar Grove's proposed bonds do not pledge the taxing power of any government entity. The bondholders would have no right, if the trust funds were insufficient to meet the bond obligations, to compel the levy of ad valorem taxation. Consequently, the proposed tax-increment-financed bonds are constitutional without a referendum.

III. CONCLUSION
For the foregoing reasons, we affirm the circuit court's final judgments validating the tax-increment-financed bonds proposed for issuance by Cedar Grove pursuant to the Community Redevelopment Act.
It is so ordered.
WELLS, ANSTEAD, PARIENTE, JJ., and CANTERO, Senior Justice, concur.
BELL, J., concurs in part and dissents in part with an opinion, in which QUINCE, C.J., concurs.
LEWIS, J., dissents with an opinion.
BELL, J., concurring in part and dissenting in part.
I agree with the majority that "section 163.346 does not impose a two-reading requirement for resolutions adopted pursuant to the Community Redevelopment Act." Majority op. at 168. However, I do not agree that Cedar Grove has the authority to issue these tax-increment-financed bonds without first obtaining approval by referendum as required by article VII, section 12 of the Florida Constitution.[4]
As I explained in City of Parker v. State, No. SC07-1400, 992 So.2d 171, 2008 WL 4240235 (Fla. Sept. 18, 2008) (Bell, J., concurring in part and dissenting in part), the "pledge of taxing power only" premise underlying State v. Miami Beach Redevelopment Agency, 392 So.2d 875 (Fla. 1980), allows local governments to pledge ad valorem revenues as the primary and potentially sole method of bond service. Such a result wholly vitiates the constitutional check on the power of local governments to incur long-term debt, a check clearly born of the chastening experience of the Great Depression. Instead of continuing to defer to precedent that vitiates the referendum requirement of article VII, section 12, I believe it is this Court's responsibility to correct its own mistake and recede from that precedent.
Receding from Miami Beach, I would hold that the phrase "payable from ad valorem taxation," as used in article VII, section 12, refers not only to the pledge of a local government's taxing power but also to the pledge of ad valorem tax revenues. Because Cedar Grove's tax increment financing plan pledges funds derived from ad valorem taxation, Cedar Grove's proposed bonds are "payable from ad valorem taxation." Consequently, approval of these bonds by referendum, as mandated by article VII, section 12, must be obtained.
*171 Accordingly, I concur in part and dissent in part.
QUINCE, C.J., concurs.
LEWIS, J., dissenting.
Despite the fact that this case involves a redevelopment project under part III of chapter 163, Florida Statutes, as did State v. Miami Beach Redevelopment Agency, 392 So.2d 875 (Fla. 1980), the details and nature of this plan are distinguishable, and its financing component thus violates article VII, section 12 of the Florida Constitution,[5] which states in relevant part:
Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only:
(a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation....
(Emphasis supplied.)
I more fully expressed my view of the plain text of this constitutional provision in my dissenting opinion in Strand v. Escambia County, No. SC06-1894, 992 So.2d 150, 2008 WL 4240151 (Fla. Sept. 18, 2008). For purposes of this case, it is enough to emphasize that the ad valorem tax revenue deposited into Cedar Grove's Community Redevelopment Trust Fund represents the sole revenue stream pledged to repay or "service" the associated bond debt. In contrast, in Miami Beach, ad valorem tax revenue was only a contingent source from which the city planned to service the associated debt if the primary source (i.e., revenue the redevelopment agency received from sales, leases, and charges for the use of the redeveloped property) proved insufficient. See 392 So.2d at 898. This distinction is dispositive because it directly implicates the central premise of our decisions in County of Volusia v. State, 417 So.2d 968, 972 (Fla.1982), and Frankenmuth Mutual Insurance v. Magaha, 769 So.2d 1012, 1023-26 (Fla.2000): The entity of local government may not circumvent the referendum requirement because its financing scheme inevitably requires that it pay for its debt with ad valorem tax revenue. See also Strand v. Escambia County, No. SC06-1894, slip op. at 22-29, 992 So.2d 150 at 161-64 (Fla. Sept. 18, 2008) (Lewis, J., dissenting); Miami Beach, 392 So.2d at 894 ("The Court looks at the substance and not the form of the proposed bonds" to determine whether the entity of local government has complied with the Constitution.).
For these reasons and those expressed in my Strand dissent, I join my colleagues in dissenting from the majority's movement away from the text of our state Constitution.
NOTES
[1] We have jurisdiction. See art. V, § 3(b)(2), Fla. Const.
[2] Specifically, the bond resolutions define "Pledged Revenues" as follows:

"Pledged Revenues" shall mean, initially, the Redevelopment Trust Fund Revenues and if and to the extent that the Issuer shall so provide by Supplemental Ordinance, (i) any Assessments that may be levied, or (ii) other legally available revenues of the Issuer if consented to by the Holders of the Bonds or the Bond Insurer on their behalf.
Resolution 07-007, art. I, § 1.01; Resolution 07-011, art. I, § 1.01.
[3] Bay County initially contested Cedar Grove's finding of blighted conditions in the Brannonville redevelopment area. However, in its reply brief, Bay County expressly abandoned this claim.
[4] Article VII, section 12 of the Florida Constitution provides:

Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only:
(a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; or
(b) to refund outstanding bonds and interest and redemption premium thereon at a lower net average interest cost rate.
(Emphasis added.)
[5] I do not address the other issues presented in the majority opinion because they are moot in light of the unconstitutional nature of Cedar Grove's tax-increment-financing scheme.