EVANDER, J.
Appellants are users of Orange County’s wastewater system. They appeal from a final order dismissing with prejudice their complaint for declaratory judgment against Orange County. In their complaint, appellants challenge the validity of a duly enacted resolution of the Orange County Board of County Commissioners setting utility rates for its wastewater system users. Appellants asserted that the methodology utilized by Orange County in establishing its rates was unfair, unjust, inequitable, and/or unconstitutional as applied. We affirm, concluding that Orange County has imposed a valid user fee on its wastewater system customers.
Pursuant to its resolution, Orange County’s rate schedule contains three components. First, there is a “volume charge,” whereby a portion of the customer’s monthly bill is based on the actual volume of water flowing into and, presumably, out of the customer’s property. Second, there is a customer service cost which is the same monthly amount for all customers. The customer service charge includes the cost of billing, customer service, and meter reading. Third, there is a readiness-to-serve/eapacity cost. This charge reflects the cost of maintaining capacity (readiness-to-serve) for each customer. The rate is based on the customer’s water meter size — the larger the meter size, the higher the rate. Appellants only challenge this third component.
The readiness-to-serve/capacity cost component is derived from a cost of service study performed by a rate consultant. The study identified the system’s annual debt service cost (the annual principal and interest on the revenue bond(s) issued to construct the infrastructure) and establishes a methodology by which those costs are allocated among the system’s users. The greater the capacity which must be set aside for a particular user (based on the size of the user’s water meter), the higher the amount charged.
Appellants’ property has two water meters — a 2½ inch meter and an eight inch meter. According to appellants, the water measured by the 2½ inch meter provides the daily source of potable water for the property and flows into the toilets, sinks, dishwashers, and drains, which are connected to the County’s wastewater system. The water measured by the eight inch meter is that water which is used if the fire suppression system is triggered, a fire line test is done, the line is drained for routine service, or there is a break in the line. If water were to flow through the fire suppression line, only a small portion would flow into the toilets, sinks, dishwashers and drains on the property, assuming the facilities were in use. A majority, if not all, of the water passing through the fire suppression line would flow through the fire sprinklers on the property — which were not connected to the County’s wastewater system.
*136 Appellants’ readiness-to-serve/capacity charge is based on the use of the eight inch water meter. They acknowledge that they are connected to the water system by an eight inch water line. However, they argue that the eight inch water line has valves or flaps so that water by-passes the eight inch water meter and goes into a smaller line with the 2½ water meter. The valves or flaps would only open if the fire line opens or the line breaks. The eight inch meter cannot simply be removed because it is required for appellants’ fire suppression system. It is appellants’ position that the fire suppression line is not “in any practical sense” connected to the County’s wastewater system and that little, if any, wastewater from this line would be treated by the County.
Appellants do not object to paying for wastewater service based on the amount of water used, but do object to paying a charge based on “the mere existence of the eight inch water meter.” Appellants contend that the wastewater system charges imposed by Orange County are not valid user fees because of 1) an alleged lack of a nexus between the charges and the benefit provided to the user; and 2) an alleged lack of a nexus between charges and the costs incurred by the County in providing this service.
The County acknowledges that, for the most part, appellants do not use the eight inch water meter, but there are circumstances in which they would. Furthermore, the County remains obligated to provide wastewater capacity consistent with the use of an eight inch water line. The County maintains that the wastewater rate charged constitutes a valid user fee and that appellants benefit from the waste-water service capacity that has been made available to them by the County.
Except as provided by general law, local governments have no authority to levy taxes other than ad valorem taxes. Collier County v. State, 783 So.2d 1012, 1014 (Fla.1999). They do, however, possess authority to impose special assessments and user fees. Id. Orange County does not contend that it is authorized by general law to levy a “tax” on its wastewa-ter system users. Thus, the issue is whether Orange County is imposing valid user fees.
“User fees” are charges based upon the proprietary right of the governing body permitting the use of the instrumentality involved. Such fees share common traits that distinguish them from taxes. The most significant of these traits are: 1) they are charged in exchange for a particular governmental service; and 2) the service provided benefits the party paying the fee in a manner not shared by other members of society. See City of Gainesville v. State, 863 So.2d 138, 144 (Fla.2003); State v. City of Port Orange, 650 So.2d 1, 3 (Fla.1994).
It is a well-settled principle that the establishment of utility rates is generally a legislative function. City of Gainesville, 863 So.2d at 147. In setting utility rates, governmental agencies enjoy a significant degree of latitude. Id. A governmental entity may charge different rates to different classes of users so long as the classifications are not arbitrary, unreasonable, or discriminatory. Id.
Indeed, Florida courts have regularly upheld local ordinances imposing mandatory fees for traditional utility service regardless of whether an individual customer actually uses or desires the service. See City of Gainesville, 863 So.2d at 147-48 (upholding city’s flat rate fee on properties for stormwater management system); State v. City of Miami Springs, 245 So.2d 80 (Fla.1971) (ruling that flat rate for sewer charges for all single family residences, *137 unrelated to actual use, was not unreasonable, arbitrary or in conflict with state or federal constitutions or law); City of Riviera Beach v. Martinique 2 Owners Ass’n, 596 So.2d 1164 (Fla. 4th DCA 1992) (holding that subject solid waste removal ordinance applied to unoccupied condominiums without regard to actual use); Town of Redington Shores v. Redington Towers, Inc., 354 So.2d 942 (Fla. 2d DCA 1978) (holding that mandatory sewer charges against unoccupied property applied from date sewer main was available to be used, and that sewage charges were reasonably related to value of service rendered either as actually consumed or as readily available); Stone v. Town of Mexico Beach, 348 So.2d 40 (Fla. 1st DCA 1977) (finding that mandatory flat rate for garbage service, regardless of use, was not contrary to constitutional standards).
The Town of Redington Shores case is particularly instructive. There, the property owner argued that it should not be charged a sewage service fee for unoccupied condominium units because no benefit was being received by the property owner from any service to those units. The Second District Court of Appeal disagreed, observing that the property owner’s argument “fails to consider that service is provided to each unit by the mere availability of use upon connection of the building with the sewage system.” 354 So.2d at 944 (emphasis added). In the instant case, appellants have never alleged that the County does not provide it with the capacity to treat wastewater that would flow from property using all eight inches of metered water flow. The fact that the actual use of the eight inch water line is far less than its maximum potential use does not render Orange County’s rate schedule illegal. Furthermore, we cannot conclude that the readiness-to-serve/capacity cost component of Orange County’s rate schedule is arbitrary, unreasonable, or discriminatory.
We also reject appellants’ contention that Orange County’s ordinance violates section 153.11(l)(c), Florida Statutes (2008). Section 153.11 authorizes counties to charge for wastewater services. Subsection (l)(c) provides a non-exclusive list of permissible methodologies a county may use in establishing a fee schedule:
(l)(c) Such rates, fees and charges shall be just and equitable and may be based or computed upon the quantity of water consumed and/or upon the number and size of sewer connections or upon the number and kind of plumbing fixtures in use in the premises connected with the sewer system or upon the number or average number of persons residing or working in or otherwise connected with such premises or upon any other factor affecting the use of the facilities furnished or upon any combination of the foregoing factors.
§ 153.11(1)(c), Fla. Stat. (2008). The only mandatory provision in section 153.11(l)(c) states that the fees must be “just” and “equitable.” The lack of actual use does not render a fee unjust or inequitable. Pinellas County v. State, 776 So.2d 262, 268 (Fla.2001).
AFFIRMED.
LAWSON and COHEN, JJ„ concur.